**QUINN E. KURANZ** OSB No. 114375
quinn@kuranzlaw.com
The Office of Q.E. Kuranz, Attorney at Law, LLC
65 SW Yamhill St., Suite 300
Portland, OR 97204
Telephone:  503-757-4749
Fax: 503-200-1289
**ATTORNEY FOR PLAINTIFF**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| DANIEL WILSON, | CASE NO.:   1:17-01558-MC |
| Plaintiffs, | FIRST AMENDED COLLECTIVE ACTION COMPLAINT |
| v. | COMPLAINT FAILURE TO PAY OVERTIME; PENALTIES; LIQUIDATED DAMAGES-ORS 653.055; ORS 652.150; 29 USC § 207, 216 |
| **DECIBELS OF OREGON, INC., DENNIS SNYDER, an individual, and LEO BROWN, an individual.** | |
| Defendants. | |
| | JURY DEMAND |

Plaintiff alleges:

## JURISDICTION AND VENUE

1.  Plaintiff DANIEL WILSON is a resident of the state of Oregon.  Plaintiff is used

    interchangeably with technicians as all Installation Technicians were subjected to the

Page 1    FIRST AMENDED COLLECTIVE ACTION COMPLAINT – FAILURE TO PAY
         OVERTIME

same pattern, practice, and policy of not counting all hours worked each day toward the

total hours worked each week.

2.  Defendant Decibels of Oregon, Inc., is a foreign business corporation, incorporated in a

state other than Oregon and has its principle place of business in Tacoma, Washington.

3.  Defendant Dennis Snyder is a resident of the state of Washington.

4.  Defendant Leo Brown is a resident of the State of Oregon.

5.  This court has subject matter jurisdiction because the claims alleged herein arise under

the Fair Labor Standards Act (FLSA).  28 USC § 1331.

6.  This court has subject matter jurisdiction over plaintiffs' state law wage claims because

plaintiffs' state law wage claims arise from the same set of facts as plaintiffs' FLSA

claims.  28 USC  § 1337.

7.  Plaintiffs' claims arose primarily in Jackson County, Oregon.  Venue in the Medford

Division is appropriate.

## FACTS COMMON TO ALL CLAIMS

8.  Defendants hired plaintiff on or about April 14, 2014.

9.  Plaintiff resigned his employment in May 2016.

10. Plaintiff worked as a Senior Technician, installing cable and internet services.

11. Defendants' use instrumentalities of interstate commerce, including installing

telecommunications services and using interstate freeways and highways.

12. Defendants attempted to pay plaintiff on a piece-rate, regardless of the amount of time or

number of hours that plaintiff worked.

13. Defendants or plaintiff are otherwise subject to the Fair Labor Standards Act.

14. Defendants did not count all hours worked, including time spent driving, waiting, or for work when a job would be cancelled or changed, which are required to be counted under a lawful piece-rate payment scheme.  29 CFR § 778.318(a-c); 29 CFR § 778.315.

15. On June 8, 2017, plaintiff Danny Wilson filed an Opt-In claim form, joining the case Wilson v. Decibels of Oregon, Inc. et. al., 1:16-cv-00855-CL, tolling Mr. Wilson's claims.  29 USC § 256.

16. On August 31, 2017, the court denied collective action certification, involuntarily dismissing plaintiff's claims without prejudice.

17. Plaintiff re-filed this lawsuit on October 2, 2017.   Plaintiff diligently and quickly pursued refilling his claims after involuntary dismissal of his claims on August 31, 2017.

18. The statute of limitations should be tolled through the time it took plaintiff to re-file his claims.  ORS 12.220.

**FACTS COMMON TO WAGE CLAIMS – POTENTIAL COLLECTIVE ACTION**

19. Defendants permitted or suffered plaintiff to work overtime in multiple weeks during his employment, including times dating back to May 2014 until his separation from employment in May 2016.

20. Defendants Snyder and Brown acted on behalf of defendant Decibels of Oregon, Inc., in relation to payment of plaintiff as well as other Technicians, and based on reasonable belief, to be shown after additional discovery, helped implement the policy and practice of paying Technicians, including plaintiff as described herein.  FLSA § 203(d).

21. Defendants required plaintiff and similarly situated employees to arrive at the dispatch shop at 7:15 AM each day to begin performing principal activities, including gathering

equipment, loading vehicles, and going through the "check-in" process, which is compensable time and part of plaintiff's principal activities working for defendants.

22. Plaintiffs were not permitted to arrive at their first installation job each morning until at least 8:00 or 8:15 AM.

23. Defendants did not count the time worked from the time the installation technician was required to arrive at the warehouse each morning to begin performing principal activities to the time the technician left the warehouse to perform installation jobs as counted hours worked for purposes of computing overtime.

24. During the day, if the installation technician, including plaintiff, did not have any assigned work that installation technician was required to wait in or near their company service vehicles to receive another dispatched installation.  Defendants required plaintiffs to be ready and available to work from the time the installation technician began their shift at 7:15 AM until the time the installation technician was permitted to go End of Day (EOD).

25. Installation technicians were on duty throughout the workday from 7:15 AM to the time they went EOD.

26. When there was a gap in time between installation jobs, installation technicians were required to indicate their status as "available" for another installation job, call the dispatch office and request another assignment, and then wait for dispatch to provide them with another assignment.

27. Defendants did not count all the time the installation technician spent traveling, waiting between installation jobs, waiting for access to a customer's property, or waiting for a

Page 4    FIRST AMENDED COLLECTIVE ACTION COMPLAINT – FAILURE TO PAY OVERTIME

work assignment, even though the technician was required to wait in or near their vehicle and be immediately available for a new work assignment.

28. Installation Technicians recorded the installation jobs they completed on the Daily Log. Installation Technicians were permitted to include 15 minutes of travel time on the Daily Log for each installation job the installation technician completed, but installation technicians were not permitted to count all the time they spent driving on the daily log. Regardless, defendants position was to only count the actual time spent performing installation work and 15 minutes of drive time between jobs toward the total hours the installation technician worked each week.

29. If the job was cancelled before the Installation Technician could begin performing the installation job, defendants would not count that time spent toward the installation technicians total hours worked.

30. Defendants only count the hours that technicians perform productive work installing cable and internet equipment, plus 15 minutes of travel time.

31. For each installation completed, defendants compensate the installation technicians on a piece-rate basis.

32. Defendants agree to pay installation technicians an additional hourly rate for the Installation Technicians attendance at regular meetings, which were typically scheduled every other Thursday, beginning at 7:00 AM in the morning.

33. Defendants would also pay installation technicians an hourly rate if the technicians' regular hourly rate fell below the state or federal minimum wage.

34. At the discretion of management, defendants would sometimes pay an installation

technician for time spent on an installation job, which the technician was unable to complete, thus not qualifying for the piece-rate.

35. In order for installation technicians to receive the additional compensation for meetings, defendants required technicians to fill out and submit Time Cards even though defendants knew or should have known that the employee was in attendance at the meeting.

36. Defendants required installation technicians to use software that tracked installation technicians status each day, including "log on" to the system, "available" status when the technician was waiting and available for an assignment between installation jobs, "travel" status when the technician was traveling between jobs, "lunch" status when the technician was on lunch, "on-job" status, when the technician was performing work, and "end of day" (EOD) status, when the technician was permitted to go end of day.

37. In order for installation technicians to receive the additional compensation for a job "going down," the installation would have to get approval from a supervisor as the additional compensation was discretionary.  Typically, if the installation technicians' weekly earnings were more than minimum wage, defendants would not agree to pay technicians for installation jobs that "went down" and defendants would not permit the installation technician to fill out a Time Card for that time.  Defendants would not count that time toward the total hours an installation technician worked each week.

38. Each Tuesday, Installation Technicians were required to finish their final installation, get approval from dispatch to go End of Day, and then drive from wherever they were located in the field to the warehouse to complete the refresh process.  The refresh process took between 15 to 20 minutes from the time the installation technician returned to the

Page 6    FIRST AMENDED COLLECTIVE ACTION COMPLAINT – FAILURE TO PAY OVERTIME

warehouse if there was no one waiting, but it could take up to 1 or 2 hours if there were a

lot of technicians there doing refresh at the same time.  Defendants did not count the time

spent driving to return to the office or time spent performing the necessary "refresh"

process toward actual hours worked each week.

39. Defendants do not count hours for the time technicians spent at the dispatch office each

    morning from the required arrival, traveling from the dispatch office to the first job,

    travelling between jobs, waiting between jobs, or returning to the dispatch office, and

    performing principal activities of refresh, a process extremely necessary for the ability to

    perform their work.   This failure to count all hours actually worked caused defendants'

    to undercount and thus underpay installation technicians for overtime.

40. Defendants would require plaintiff and other Technicians to work from 7:15 AM each

    day until the employee went "End of Day (herein referred to as "EOD").

41. When installation technicians finished their last installation job of the day, the technician

    was required to contact the dispatch office to request permission to go EOD.  Sometimes

    the technician would have to wait up to 30 minutes for the dispatch office to tell the

    technician whether there was another installation job or whether the technician could go

    EOD.

42. By virtue of use of scheduling a required arrival time each morning, requiring technicians

    to use the Workforce Express software to update their status while in the field, and prior

    authorization from dispatch and Charter communications prior to going home, defendants

    knew or should have known all the hours that plaintiffs worked each day.

43. Defendants are in possession, custody, and control of plaintiff's time records, Workforce

Express data and information, Daily Records, and work orders, as well as these documents for other employees that will demonstrate in part how many hours plaintiffs worked each day and each week.

44. Technicians, including plaintiff were not compensated for overtime hours worked because defendants did not count time spent after arriving at the warehouse each day at 7:15 AM until the time when the technician was permitted to go EOD.

45. Plaintiffs regular rate of pay is yet to be determined.  The regular rate of pay is a function the amount actually paid to plaintiff in any given workweek by the number of regular hours he worked.

46. Defendants did not properly calculate the overtime pay they paid to plaintiff because defendants did not count all hours plaintiff actually worked when calculating the overtime rate.

47. Often, defendants required plaintiff and Technicians to work six days per week.

48. Defendants only paid plaintiff and other Technicians overtime when they were actually performing an installation job for a period of time of more than 40 hours per week. Defendants did not account for plaintiff's time spent performing all actual hours worked, performing principal activities in the morning at 7:15 AM, time spent performing non-productive work as required, including all travel time, or wait time.

49. The proper way to count installation technicians actual hours worked is to count all hours from the time the installation technician began each day at 7:15 AM to the time the installation technician was permitted to go EOD at the end of each day, less any full lunch period in which the technician was completely relieved of all duties for 30 minutes

or more during the day.

50. Defendants' actions in choosing to not count all hours plaintiff actually was willful in that
defendants knew how they were paying plaintiff and intended to pay plaintiff in that
manner.  On or about May 18, 2017, June 8, 2017, and June 30, 2017, plaintiff sent
written notice of unpaid wages to defendants in the form of a declaration and Opt-In
form, attempting to Opt-In to an FLSA claim.  Defendants did not pay plaintiff any
unpaid overtime wages.

51. Plaintiff and other Technicians are entitled to recover unpaid overtime wages, liquidated
damages, and costs, disbursements, and attorney fees.  ORS 653.055; 29 USC 207, 216.

## PLAINTIFFS SEEK TO REPRESENT ALL EMPLOYEES COLLECTIVELY

52. Plaintiff on his own behalf and on behalf of the collective group of Technicians seeks to
represent all similarly situated employees of defendants in their FLSA claims.

53. Plaintiff seeks to represent all technicians because they were all exposed to the same
pattern and practice of not counting all hours actually worked throughout the day during
the continuous workday.

54. As a way of differentiating technicians, plaintiff seeks to represent two separate sub-sets
of employees:

   a. first, those employees who were primarily assigned to work out of the Medford
   warehouse, in which those employees were required to arrive at 7:15 AM each
   morning to begin performing principal work activities;

   b. second, those employees who were primarily assigned to work in locations other
   than out of the Medford Warehouse, who were typically permitted to drive from

their home or hotel room directly to their first assignment, but who may have

been required to arrive at a storage space or warehouse each day or several times

per week in order to perform principal work activities.

    c.  Regardless, plaintiff seeks to represent all installation technicians as they were all

subjected to the same policy, pattern, and practice of not having all hours actually

worked counted toward the total hours they worked each week.

55. At all material times herein, defendant Decibels of Oregon, Inc., defendant Dennis

Snyder, and defendant Leo Brown were and is an employer within the meaning of the

FLSA.

56. Defendants are covered under the FLSA.

57. Defendants continue to employee Technicians that may also have claims for unpaid

overtime and liquidated damages against defendants.

58. Plaintiff on his own behalf and the class he seeks to represent are or were paid on a piece

rate, and not exempt from the right to receive overtime payments under the FLSA.

59. Plaintiff on his own behalf and the class he seeks to represent are entitled to be paid

overtime compensation for all overtime hours worked, as well as liquidated damages

equal to the amount of unpaid overtime.

60. At all material times, defendants had a policy and practice of not properly paying

overtime to its Technician employees while requiring, suffering, or permitting, those

employees to work more than 40 hours per week.

61. As a result of defendants' failure to compensate its piece-rate employees, including

plaintiffs and the class he seeks to represent, at a rate of not less than 1.5 times the regular

rate of pay for worked performed in excess of forty hours per work week, defendants

violated and continue to violate the FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. §

207(a)(1) and § 215(a).

62. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within

the meaning of 29 U.S.C. § 255(A).

63. Plaintiff on his own behalf and on behalf of the class that he seeks to represent are

entitled to damages in the amount of their respective unpaid overtime compensation, plus

liquidated damages as provided by the FLSA, 29 U.S.C. §216(b) and such other legal and

equitable relief as the Court deems just and proper.

64. Plaintiff on his own behalf and the class he seeks to represent requests recovery of

attorneys' fees and costs associated with this case under 29 U.S.C. §216(b).

## PLAINTIFFS' CLAIMS FOR RELIEF

*Plaintiff's Wage Claims*

65. Plaintiff incorporates all allegations in relation to his wage claims from paragraphs 8-64.

66. Plaintiff is entitled to recover all wages owing for uncompensated hours in which

plaintiff was suffered or permitted to work in excess of 40 hours per week.

67. Plaintiff is entitled to recover overtime payments at 1.5 times the regular rate of pay for

each hour worked in excess of 40 hours per week.

68. Plaintiff is entitled to recover liquidated damages in an amount equal to unpaid overtime

wages.  FLSA § 216.

69. Plaintiff is entitled to recover state penalties equal to 240 hours at plaintiff's regular rate

of pay for defendant's failure to pay overtime wages.  ORS 653.055; ORS 652.150.

70. Plaintiff is entitled to recover costs, disbursements, and attorney fees for prevailing in any portion of his claim for unpaid wages.  ORS 652.200; ORS 653.055; FLSA § 216.

71. **Wherefore,** Plaintiff, individually, prays for relief in all amounts due against defendants' jointly and severally, including claims for overtime, liquidated damages, state penalties, costs, disbursements, and attorney fees. Plaintiff on behalf himself and the class he seeks to represent prays for judgment against defendants stated herein as follows:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

A.    Designation of this action as a collective action on behalf of plaintiff and the class he seeks to represent pursuant to the FLSA and a prompt issuance of notice

pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the FLSA

opt-in class appraising them of the pendency of this action, permitting them to

assert timely FLSA claims in this action by filing individual consent to sue forms

pursuant to 29 U.S.C. § 216(b) and equitable tolling of the statute of limitations

from the date of filing this Complaint until the expiration of the deadline for filing

consent to sue forms pursuant to 29 U.S.C. § 216(b);

B.    A declaratory judgment that the practices complained of herein are unlawful

under the FLSA, 29 U.S.C. § 201 *et seq.* and ORS 653.055;

C.    Permanent injunctive relief enjoining defendants, its officers, employees and

agents from violating the FLSA, as described herein;

D.    Overtime compensation in the amount due for time worked in excess of 40 hours

per workweek on behalf of plaintiffs and the class they seek to represent;

E.    Liquidated damages in an amount equal to the overtime award;

F.    Designation of plaintiff as the class representative;

G.    state penalties equal to 240 hours at plaintiff's regular rate for failure to pay

overtime;

H.    Reasonable costs and attorney fees;

I.    For such other and further relief as the Court may deem just and equitable for

plaintiff.

Plaintiff demands a trial by jury.

DATED this February 28, 2018.

/s/Quinn E. Kuranz
Quinn E. Kuranz, OSB #114375
Of Attorneys for Plaintiff